**Thomas P. Riley, SBN 194706**
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
**First Library Square**
**1114 Fremont Ave.**
**South Pasadena, CA 91030**

**Tel:  626-799-9797**
**Fax:  626-799-9795**
**TPRLAW@att.net**

**Attorneys for Plaintiff**
**J & J Sports Productions, Inc.**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

| | |
|---|---|
| **J & J SPORTS PRODUCTIONS, INC.,** | **CASE NO**. **1:10-CV-02249-LJO-JLT** |
| **Plaintiff,** | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT** |
| **v.** | |
| **JOSE ALFREDO GOMEZ, et al.,** | |
| **Defendant.** | |

## INTRODUCTION

Plaintiff, J & J Sports Productions, Inc. (hereinafter "Plaintiff") is an international distributor of sports and entertainment programming.  By contract, Plaintiff secured the domestic commercial exhibition rights to broadcast the *Oscar De La Hoya v. Manny Pacquiao Welterweight Championship Fight Program* telecast nationwide on Saturday, Decemeber 6, 2008. This *Program* included the main event (between Oscar De La Hoya and Manny Pacquiao) along with undercard (preliminary) bouts, televised replay, and color commentary, hereinafter collectively referred to as the "*Program*".

Plaintiff thereafter entered into sublicensing agreements with commercial entities throughout the United States and its territories, wherein it granted limited public exhibition rights

1   to these entities (sublicensees) for the benefit and entertainment of the patrons within their

2   respective establishments (e.g., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs,

3   etc.).  The interstate transmission of the Plaintiff's *Program* was encrypted and made available

4   only to Plaintiff's customers (commercial locations that paid Plaintiff the requisite closed-circuit

5   (commercial) license fees to exhibit the *Program*).

6          On Saturday, Decemeber 6, 2008, investigator Ramon Simon observed the unlawful

7   exhibition of the *Program* at the Defendant's commercial establishment.  Ramon Simon's

8   observations were later documented in a sworn affidavit now before this Honorable Court.  *See*

9   *Declaration of Affiant*.

10         On December 3, 2010, Plaintiff filed suit against Aurelio Cortes a/k/a Aurelio J. Cortez,

11   individually and d/b/a Los Manjares Restaurant (hereinafter "Defendant") after Plaintiff's efforts

12   to resolve this matter informally failed.  The thrust of Plaintiff's Complaint alleged that

13   Defendant, and/or her employees or agents unlawfully intercepted and intentionally exhibited the

14   *Program* at  Defendant's establishment for the purpose of direct or indirect commercial

15   advantage, thereby violating Section 605 of the Federal Communications Act of 1934, as well as

16   Title 47 U.S.C. § 553.  Plaintiff's complaint also includes a pendent common-law claim of

17   conversion.

18         Neither the Defendant nor anyone acting on the Defendants' behalf filed an Answer or

19   any other responsive pleading to Plaintiff's duly served complaint.  Accordingly, on April 16,

20   2012, following Plaintiff's Request, the Court entered default against the Defendant in this action.

21         **WHEREFORE**, Plaintiff respectfully requests this Honorable Court now enter judgment

22   against the Defendants as prayed forth below.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**TABLE OF CONTENTS**

2

Page

3

**INTRODUCTION** . . . . . . . . . 3

4

**ARGUMENT** . . . . . . . . . 3

5
6

I.  PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED DAMAGES UP TO THE MAXIMUM PERMISSIBLE UNDER THE UNITED STATES CODE . . . . . . . . 4

7
8

A.  Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II). . . 5

9

B.  "Enhanced" Damages Under 47 U.S.C. § 605(e)(3)(C)(ii). . 9

10

C.  Nominal Damages Have Proven Insufficient To Combat Piracy. . 14

11

II.  PLAINTIFF IS ENTITLED TO DAMAGES FOR CONVERSION. . 15

12

13

**CONCLUSION** . . . . . . . . . 16

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR DEFAULT JUDGMENT BY THE COURT – CASE NO. 1:10-cv-02249-LJO-JLT

1

**TABLE OF AUTHORITIES**

2

Page

3
**CASES**

4 *Am. Cablevision of Queens v. McGinn,*
5     817 F.Supp. 317 (E.D.N.Y. 1993) . . . . . . 10

6 *Cablevision Systems v. Seimon*,
    767 F.2d 1364 (9th Cir. 1985) . . . . . . 3

7
*Cox Cable Cleveland Area, Inc. v. King*,
8     582 F. Supp. 379, 381 (E.D. Ohio 1983) . . . . . 16

9 *Danning v. Lavine*,
10     572 F.2d 1386 (9th Cir. 1978) . . . . . . 3

11 *Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*,
    219 F.Supp.2d 769 (S.D. Tex. 2002) . . . . . . 10, 13
12
*Fallaci v. New Gazette Literary Corp.*,
13     568 F.Supp. 1172 (S.D.N.Y. 1983) . . . . . . 15

14 *F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
15     344 U.S. 228 (1952) . . . . . . . 4

16 *Garden City Boxing Club, Inc. v. Batista*,
17     2007 WL 4276836 (E.D.N.Y. 2007) . . . . . . 10, 13

18 *Garden City Boxing Club, Inc. v. Frezza*,
    476 F.Supp.2d 135 (D. Conn. 2007) . . . . . . 11, 12
19
*Garden City Boxing Club, Inc. v. Paquita's Café, Inc.*,
20     2007 WL 2783190 (S.D.N.Y. 2007) . . . . . . 10

21 *Geddes v. United Financial Group*,
22     559 F.2d 557 (9th Cir. 1977) . . . . . . 3

23 *Innovative Sports Marketing v. Medeles*,
    2008 WL 1758886 (S.D.Tex. 2008) . . . . . . 13
24
*International Cablevision, Inc. v. Sykes*,
25     75 F.3d.123 (2d. Cir. 1996) . . . . . . 3

26 *J & J Sports Productions, Inc. v. Castrillon*,
27     2009 WL 1033364 (E.D.N.Y. 2009) . . . . . . 15

28

-4-

*J & J Sports Productions, Inc. v. Drake,*
     2006 WL 2927163 (E.D.N.Y. 2006) . . . . . . . 11

*J & J Sports Productions, Inc. v. Esquivel,*
     2008 WL 4657741 (E.D.Cal. 2008) . . . . . . . 7

*J & J Sports Productions, Inc. v. Ferreyra,*
     2008 WL 4104315 (E.D.Cal. 2008) . . . . . . . 14

*J & J Sports Productions, Inc. v. Flores,*
     2009 WL 1860520 (E.D.Cal. 2009) . . . . . . . 8

*J & J Sports Productions, Inc. v. Garcia,*
     2009 WL 2567891 (S.D.Tex. 2009) . . . . . . . 10

*J & J Sports Productions, Inc. v. George,*
     2008 WL 4224616 (E.D.Cal. 2008) . . . . . . . 8

*J & J Sports Productions, Inc. v. Lang,*
     2008 WL 2917165 (W.D.N.Y.) . . . . . . . 14

*J & J Sports Productions, Inc. v. Lopez,*
     2008 WL 2915109 (E.D.Cal. 2008) . . . . . . . 9

*J & J Sports Productions, Inc. v. Man Thi Doan,*
     2008 WL 4911223 (N.D.Cal. 2008) . . . . . . . 14

*J & J Sports Productions, Inc. v. Manzano,*
     2008 WL 4542962 (N.D.Cal. 2008) . . . . . . . 14

*J & J Sports Productions, Inc. v. Medinarios,*
     2008 WL 4412240 (N.D.Cal. 2008) . . . . . . . 14

*J & J Sports Productions, Inc. v. Rubio,*
     2008 WL 4360883 (S.D.Tex. 2008) . . . . . . . 9

*Joe Hand Promotions, Inc. v. Cat's Bar, Inc.,*
     2009 WL 700125 (C.D. Ill. 2009) . . . . . . . 13

*Joe Hand Promotions, Inc. v. Chapa,*
     2009 WL 2215124 (S.D.Tex. 2009) . . . . . . . 13

*Joe Hand Promotions, Inc. v. Garcia,*
     546 F.Supp.2d 383 (W.D.Tex. 2008) . . . . . . . 10

*Joe Hand Promotions, Inc. v. Haddock,*
     2009 WL 2136117 (E.D.Cal. 2009) . . . . . . . 3, 11

*Joe Hand Promotions, Inc. v. Martinez*,
       2008 WL 4619855 (S.D.N.Y. 2008) . . . . . . 10

*Joe Hand Promotions, Inc. v. Tidmarsh*,
       2009 WL 1845090 (E.D.Cal. 2009) . . . . . . 7

*Kingvision Pay-Per-View, Ltd. v. Dosani*,
       2006 WL 3316988 (S.D.Tex. 2006) . . . . . . 8, 12

*Kingvision Pay-Per-View Ltd. v. Gadson*,
       2007 WL 2746780 (M.D.N.C. 2007) . . . . . . 9

*KingVision Pay-Per-View, Ltd. v. Guerra*,
       2007 WL 3001659 (S.D. Tex. 2007) . . . . . . 13

*Kingvision Pay-Per-View, Ltd. v. Gutierrez*,
       544 F.Supp.2d 1179 (D.Colo. 2008) . . . . . . 11

*Krueger v. Bank of America*,
       (1983) 145 Cal.App.3d 204, 193 Cal.Rptr. 322 . . . . 15

*Lauretex Textile Corp. v. Allton Knitting Mills, Inc.*,
       519 F. Supp. 730 (S.D.N.Y. 1981) . . . . . . 4

*ON/TV of Chicago v. Julien*,
       763 F.2d 839 (7th Cir. 1985) . . . . . . 16

*Quincy Cablesystems, Inc. v. Sully's Bar*,
       640 F.Supp. 1159 (D.Ma. 1986) . . . . . . 16

*Subscription Television of Greater Washington v. Kaufman*,
       606 F. Supp. 1540 (D.D.C. 1985) . . . . . . 16

*Time-Warner Cable of N.Y. v. Googies Luncheonette, Inc.*,
       77 F.Supp.2d 485 (S.D.N.Y. 1999) . . . . . . 10

*U.S. v. Scott*,
       83 F. Supp. 280 (N.D. Miss. 1992) . . . . . . 4-6

## STATUTES AND RULES

United States Code

      47 U.S.C. § 605 . . . . . . . . passim

      42 U.S.C. § 553 . . . . . . . . passim

1

California Code of Civil Procedure

2

Cal. Civ. Code § 3336   .   .   .   .   .   .   .   15

3

4

**MISCELLANEOUS**

5

*U.S. Cong. & Admin. News*   .   .   .   .   .   .   .   .   4-6

6

*Wright, Miller & Kane, Federal Practice and Procedures*   .   .   .   .   3

7

8

///

9

///

10

///

11

///

12

///

13

///

14

///

15

///

16

///

17

///

18

///

19

///

20

///

21

///

22

///

23

///

24

///

25

///

26

///

27

///

28

///

## **ARGUMENT**

I.   **PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED DAMAGES UP TO THE MAXIMUM PERMISSIBLE UNDER THE UNITED STATES CODE.**

Once a default judgment is entered, "it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect between the parties as a judgment rendered after a trial on the merits**.**" *Wright, Miller & Kane, Federal Practice and Procedures* § 2684, p. 4-19-20.  In that regard, the Defendant's default herein serves as an admission of Plaintiff's well-pled allegations of fact.  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir. 1977).  This standard has been applied to cases substantially similar to the one before this Court. *See e.g. Joe Hand Promotions, Inc. v. Haddock*, 2009 WL 2136117 (E.D.Cal. 2009). Accordingly, the only issue remaining to be decided in this case is the amount of damages and costs to which Plaintiff may be entitled to recover from Defendant as a result of Defendant's unauthorized exhibition of Plaintiff's *Program*.

Title 47 U.S.C. Section 605 protects companies like Plaintiff's against the theft of proprietary communications such as the instant *Program.  See Cablevision Systems v. Seimon*, 767 F.2d 1364 (9th Cir. 1985); *International Cablevision, Inc. v. Sykes*, 75 F.3d.123 (2d. Cir. 1996).  The majority of courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system.

Unfortunately, in this particular action, because the Defendant has failed to respond to Plaintiff's duly served complaint, Plaintiff cannot determine the precise means that the Defendant used to receive the *Program* unlawfully.  Nevertheless, Plaintiff should not be prejudiced because it cannot isolate the precise means of signal transmission the Defendant used and respectfully submits its prayer for recovery of damages, pursuant to Title 47 U.S.C.  Section 605, as it is inherently reasonable in this instance where the Defendant has placed himself in default for failing to answer or otherwise respond.

///

As a starting point, a party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages.   47 U.S.C. § 605(e)(3)(C).  Pursuant to that section, the aggrieved party may recover "a sum of not less than $1,000.00 or more than $10,000.00, as the Court considers just" for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition, if the Court determines that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may increase the award of damages by up to $100,000.00 for each violation.  47 U.S.C. § 605(e)(3)(C)(ii) (these damages have come to be referred to as "enhanced" damages). Because Plaintiff constitutes an aggrieved party under 47 U.S.C. section 605, *et seq.* (hereinafter "Statutes"), *see* 47 U.S.C. § 605(d)(6), Plaintiff is entitled to damages from the Defendant.

Los Manjares Restaurant is a commercial establishment, and as such, could only have lawfully obtained the *Program* if Plaintiff had contracted with Defendant for the rights to show it.  However, this lawful approach was not taken.  Therefore, Defendant must have undertaken specific wrongful actions to intercept and/or receive and broadcast the encrypted telecast.  *See Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by the Court* concurrently filed with this document (hereinafter "*Plaintiff's Affidavit*"). In light of the fact that Defendant necessarily must have committed wrongful acts in order to intercept, receive, and broadcast the *Program*, coupled with the ongoing piracy problems encountered in the satellite broadcast industry (as discussed in detail below), Plaintiff seeks statutory damages, up to the maximum permissible under statute, from the Court in this action.

Statutory damages are appropriate where actual damages are difficult to prove.  *Lauretex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981).  The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations.  *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).  In the instant case, as more fully discussed *infra*, it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions.  Accordingly, it is appropriate for Plaintiff to elect to receive statutory damages in the instant action.

In order to deter the unlawful use of communications such as the *Program*, Congress specifically designed the Statutes to provide "both Prosecutor[s] and civil plaintiffs [with] the legal tools they need to bring piracy under control." *Trademark & Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7,* 5577, 5658; *see also U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D. Miss. 1992). To reach these ends, the Statutes include severe penalties, both civil and criminal, for those who intercept, receive and/or broadcast protected communications. *See Scott*, 783 F. Supp. At 281; *see generally* § 47 U.S.C. § 605(e). Moreover, Congress has equated a violation of the Statutes to a theft of service. *See 1988 U.S. Code Cong. & Admin. News 7, 5577, 4642-43*. In 1988, in an effort to further deter theft, Congress amended the Statutes to provide for more severe penalties for violations. *Id.* at 5657.

As set forth within *Plaintiff's Affidavit*, the Defendant's interception, receipt, and broadcast of the encrypted *Program* was not inadvertent. Section 605(e)(3)(C)(iii) provides for limited damages to the aggrieved party "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section . . . .", as stated by Congress, this type of situation occurs rarely:

> [i]t is not intended that this provision serve in any way as a defense to determination of liability under subsection (a), but rather only as provision to be exercised in the court's discretion for those rare instances of ignorance of the law on the part of one adjudged to have violated it.

*Cable Communications Policy Act*, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol. 8, 4745, 4751. Instead, when Congress enacted the Statutes, it was specifically cognizant of the severe impact of theft of various wire communications, including closed-circuit programming, such as the *Program*. As stated in the House Bill:

> The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-the theft cable service. This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire into building's hallway that issued for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants. Such practices do not only often permit one to obtain cable services without paying the installation and hookup costs, but also, for instance, involve individuals gaining access to

premium movie and sports channels without paying for the receipt of those services.

Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.  The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

*Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News*. '84 Bd. Vol. -6, 4655, 4720.  Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise should be receiving payment for their programming or descrambling devices.  *See U.S. v. Scott*, 783 F.Supp. 280, 281 (N.D. Miss. 1992) (quoting 1984 *U.S. Code Cong. & Admin. News* 4655, 4746).

A.    Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II).

In light of the above observations, as its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  As indicated above, the amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be no less than $1,000.00 nor more than $10,000.00 for each violation.  *Id.*  Plaintiff respectfully requests that this Court award up to the maximum $10,000.00 permissible under the statute.

Before addressing cases that have awarded damages under this section, it is important to note the specific facts of this case.  As noted by the uncontroverted Affidavit of Ramon Simon, Defendant broadcasted the *Program* on two televisions.  *Declaration of Affiant*.  The capacity of Defendant's establishment was 40, and a head count while Ramon Simon was present (between at approximately 7:10 p.m.) revealed the total number of patrons to be 40. Los Manjares Restaurant did not require a cover charge to enter the establishment.  *Id.*  Even in such cases of commercial signal piracy where there has been no egregious circumstances noted, the court has the discretion to award significant damages.

For instance, in the case of *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 WL 1845090 (E.D.Cal. 2009) the Court awarded damages under both sections 605 and 553. While Plaintiff

-11-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR DEFAULT JUDGMENT BY THE COURT – CASE NO. 1:10-cv-02249-LJO-JLT

agrees that the *Tidmarsh* Court did not undertake an analysis of the viability of awarding damages under both sections, Plaintiff does however request that, to the extent possible, this Court look to the award made under section 605 in that case to take into account the aggregate award as representative of an appropriate punishment (While bearing in mind of course, that this Court may not award more than $10,000.00 per statutory violation).  In *Tidmarsh*:

> [T]he summons and complaint were properly served upon Defendant, her default was properly entered, and the complaint is sufficiently well-pled. By default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage. Although deterrence of future violations are important objectives of the statutes, the facts before the Court indicate that Defendant's establishment was not large, with a maximum capacity of approximately 50 people. . . . Plaintiff's investigator . . . noted it contained . . . a large television on one side of the establishment and a second, much smaller, television on the opposite side. [He] conducted three head counts while he was present: 23/27/29. He viewed the program on one television, a 55″ screen located in the right corner of the establishment. Given the relatively small impact of Defendant's actions, the Court finds that the amount of requested damages should be reduced.

*Id.* at *3.

Even though the *Tidmarsh* court found a "small impact," it nonetheless awarded the $10,000.00 maximum allowed under section 605(e)(3)(c)(i)(II).  *Id.*  The *Tidmarsh* Court also awarded an additional $10,000.00 in enhanced damages (the Court did not specify a division of this award between sections 605 and 553).  *Id.*

A similar analysis, leading to a similar result, was utilized in *J & J Sports Productions, Inc. v. Esquivel*, 2008 WL 4657741 (E.D.Cal. 2008), where the district court found:

> Here, the summons and complaint were properly served upon Defendant, her default was properly entered, and the complaint is sufficiently well-pled. By her default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage. Although deterrence of future violations are important objectives of the statutes, the facts before the Court indicate that Defendant's establishment was not large, with a maximum capacity of 75 people. . . . Plaintiff's investigator . . . conducted three head counts while he was there, which were 35/35/35. He viewed the program on one television, a 27″ screen located on a wall of the restaurant. Given the relatively small impact of Defendant's actions, the Court finds that the amount of requested damages should be reduced.

*Id.* at * 3 (emphasis added).

1    Like *Tidmarsh*, the *Esquivel* court awarded total damages of $30,000.00, $10,000.00

2   under both sections 553 and 605 and an additional $10,000.00 in enhanced damages (the Court

3   did not specify a division among the statutes).  *Id.*

4    Another case in which a "minor" violation led to a maximum statutory damages award

5   was *J & J Sports Productions, Inc. v. Flores*, 2009 WL 1860520, *2 (E.D.Cal. 2009).  In *Flores,*

6   there was no cover charge, no proof that the Defendants profited from their actions, and the three

7   head counts were 35/35/35.  Once again, this is comparable to the situation involving Plaintiff

8   herein; *see also J & J Sports Productions, Inc. v. George*, 2008 WL 4224616 (E.D.Cal. 2008)

9   (Maximum statutory damages awarded where establishment had thirty person capacity and no

10   more than 20 people watching event at any given time; event was broadcast on one 27"

11   television, and there was no cover charge).

12    Other district courts in the United States have awarded the statutory maximum under

13   section 605 without regard to the underlying facts, but simply because of the unlawful

14   interception and the need for significant deterrence.  For example, in *Kingvision Pay-Per-View,*

15   *Ltd. v. Dosani*, 2006 WL 3316988 (S.D.Tex. 2006), the court held:

16   > Several factors present in this case favor granting the maximum statutory
17   > damages of $10,000.00, as requested. The record establishes that defendant
> broadcast the event and failed to appear in this suit. The record establishes the use
18   > of an unlawful device, making the violations willful. These factors, the difficulty

19   > in detecting unlawful interception, the widespread problem of piracy, the
> projected loss to plaintiff, and the need for an award sufficient to deter future
20   > piracy by defendant and others, weigh in favor of granting maximum statutory
> damages. Plaintiff has shown the basis for an award of $10,000.00 in damages
21   > under section 605(e)(3)(C)(i)(II).

22   *Id.* at 2.[1]  The same factors that led the *Dosani* Court to award $10,000.00 in statutory damages

23   are present here.  *See also J & J Sports Productions, Inc. v. Lopez*, 2008 WL 2915109, *4

24   (E.D.Cal. 2008) ("The Court also recognizes that deterrence of future violations is a significant

25   objective of §§ 553 and 605.  Accordingly, the Court will recommend that Plaintiff's application

26

27   ---

[1] In *Kingvision*, the "establishment contained seating for approximately 200 people, approximately 34 people were
28   present, and each paid a cover charge of $3.00."  *Id.* at 2.  These factors, however, were not relevant to the Court's
award of statutory damages but, rather, as discussed below, the award of enhanced damages.

1   be granted and that damages in the sum of $30,000.00 be awarded to Plaintiff."); *J & J Sports*

2   *Productions, Inc. v. Rubio*, 2008 WL 4360883, *2 (S.D.Tex. 2008) ("Several factors . . . the

3   difficulty in detecting unlawful interception, the widespread problem of piracy, the projected

4   loss to Plaintiff, and the need for an award sufficient to deter future piracy by Defendants and

5   others, weigh in favor of granting maximum statutory damages. The Plaintiff has shown the

6   basis for an award of $10,000.00 in damages under section 605(e)(3)(C)(i)(II)"); *Kingvision*

7   *Pay-Per-View Ltd. v. Gadson*, 2007 WL 2746780, *2-3 (M.D.N.C. 2007) (Awarding $10,000.00

8   in statutory damages and $10,000.00 in enhanced damages against a commercial establishment

9   with a seating capacity of 40, 27 patrons viewing the event on 1 large screen television, and a

10  five dollar cover charge.).

11      The above cases establish that even where the violations do not appear particularly

12  egregious, maximum statutory damages may be awarded.  Plaintiff respectfully requests that this

13  Court consider these cases when determining whether to award Plaintiff up to the maximum

14  permissible under statute.

15      B.   "Enhanced" Damages Under 47 U.S.C. § 605(e)(3)(C)(ii).

16      Next, Plaintiff respectfully and additionally requests enhanced damages pursuant to

17  section 605(e)(3)(C)(ii).  Section 605(e)(3)(C)(ii) permits this Court, in its discretion, to award up

18  to $100,000.00 in additional damages where "the violation was committed willfully and for the

19  purposes of direct or indirect commercial advantage or private financial gain . . . ."  47 U.S.C. §

20  605(e)(3)(C)(ii).

21      The conclusion that the actions of defendants in cases such as these are "willful" has been

22  clearly established.  *See Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219

23  F.Supp.2d 769,  776 (S.D. Tex. 2002) ("Based on the limited methods of intercepting closed-

24  circuit broadcasting of pay-per-view events and the low probability that a commercial

25  establishment could intercept such a broadcast merely by chance" courts have held the

26  unauthorized display of such an event willful); *see also Garden City Boxing Club, Inc. v.*

27  *Paquita's Café, Inc.*, 2007 WL 2783190 at *5 (S.D.N.Y. 2007);  *J & J Sports Productions, Inc. v.*

28  *Garcia*, 2009 WL 2567891, *4 (S.D.Tex. 2009) ("The Defendants must have engaged in a

1   deliberate act since 'signals do not descramble spontaneously, nor do television sets connect

2   themselves to cable distribution systems.'") *quoting Time-Warner Cable of N.Y. v. Googies*

3   *Luncheonette, Inc.,* 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999); *Joe Hand Promotions, Inc. v.*

4   *Martinez,* 2008 WL 4619855, *6 (S.D.N.Y. 2008) ("The acquisition of an encrypted signal by

5   defendants undoubtedly required some affirmative actions that imply both a degree of technical

6   sophistication and a desire to obtain a benefit to which defendants was not entitled.").

7         In addition, the fact that such an interception is done for commercial advantage is also

8   firmly decided.  "A defendant who intercepts signals and broadcasts programming without

9   authorization 'in a place of business where certain events are shown to the public' is generally

10  held to have acted willfully and for purposes of commercial advantage."  *Garden City Boxing*

11  *Club, Inc. v. Batista,* 2007 WL 4276836, *5 (E.D.N.Y. 2007); *citing Am. Cablevision of Queens*

12  *v. McGinn,* 817 F.Supp. 317, 320 (E.D.N.Y. 1993) (further citation omitted); *see also Joe Hand*

13  *Promotions, Inc. v. Garcia,* 546 F.Supp.2d 383, 386 (W.D.Tex. 2008) ("Because of the extreme

14  unlikelihood that Defendant could inadvertently have acquired the signal to display the fight,

15  coupled with its failure to file an answer denying Plaintiff's allegations on this issue, the Court

16  finds that Defendant [acted] willfully and for purposes of direct or indirect commercial

17  advantage.") (statutory citation omitted).

18        Finally, "the court may draw an inference of willfulness from a defendant's failure to

19  appear and defend an action in which the plaintiff demands increased statutory damages based

20  on allegations of willful conduct."  *Garden City Boxing Club, Inc. v. Frezza,* 476 F.Supp.2d 135,

21  138 (D. Conn. 2007); *quoting J & J Sports Productions, Inc. v. Drake,* 2006 WL 2927163, *5

22  (E.D.N.Y. 2006).

23        With respect to the proper amount of enhanced damages, the case of *Joe Hand*

24  *Promotions, Inc. v. Haddock,* 2009 WL 2136117 (E.D.Cal. 2009) is instructive.  In *Haddock,* the

25  district court awarded a total of $50,000.00 in damages to Plaintiff.  *Id.* at *2.  The court awarded

26  $25,000.00 under both sections 553 and 605; while not specifically broken down, at a minimum,

27  the enhanced damages must have been $15,000.00.  *See* 47 U.S.C. § 605(e)(3)(c)(i)(II) (setting

28  maximum statutory award at $10,000).  In *Haddock,* the Court found that because the television

1  was broadcast on five televisions and because the establishment was located in a "relatively urban

2  city" with a population in excess of 100,000, the impact was more than minimal.  *Id.*  Here, the

3  *Program* was being displayed on one television when Ramon Simon was present. In this case, the

4  population of Fresno, California, where the Defendant's establishment is located, is nearly

5  510,500 people. *See http://en.wikipedia.org/wiki/Fresno,_California* (United States Census

6  determination that the 2010 population of Fresno, California was 510,365).  By comparison, the

7  population of Visalia, California, the city at issue in *Haddock*, was 113,487 at the time the

8  *Program* was unlawfully exhibited.  *See http://quickfacts.census.gov/qfd/states/06/0682954.html.*

9      Next, the case of *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179

10  (D.Colo. 2008), also provides a good analogy.  In *Gutierrez* there were 24 patrons in the

11  establishment and the court awarded $5,000.00 in statutory damages under section

12  605(e)(3)(c)(i)(II). Id. at 1184.  In determining the appropriate enhanced damages award, the

13  district court noted that the actions of defendants were willful, the problems of piracy were

14  pervasive, and that the award needed to serve as a deterrent. *Id.* at 1185.  The Court, however,

15  also found certain factors *did not* support a substantial damages award. *Id.* (emphasis added).

16  The Court observed that, "Plaintiff presents no evidence of prior violations; Plaintiff provides no

17  evidence of significant earnings by Defendants that night; Plaintiff's loss of revenue for one

18  establishment is not significant; there is no evidence of advertising to entice a larger crowd; the

19  restaurant did not have a cover charge; and there is no evidence that the restaurant charged a

20  premium for food and drinks that night." *Id.*  After taking all of these factors that militate

21  against enhanced damages into account, the court still awarded an additional $15,000.00.  *Id.*

22      In *Garden City Boxing Club, Inc. v. Frezza*, 476 F.Supp.2d 135 (D. Conn. 2007), the

23  district court noted that the violations were not particularly egregious.  There was only one

24  illegal interception, only 33 people were present in the establishment and only a minimal profit

25  was made by the defendants. *Id.* at 139.   In addition, it was not established that defendants had

26  ample financial resources. *Id.*  Even under these circumstances, however, the court noted:

27        plaintiff has established knowing and willful violation, for commercial advantage
      and/or private financial gain, and explains the loss in revenue and detrimental

28        effect upon lawful residential and commercial cable customers as a result of

signal piracy, which interest and concomitant need for deterrence other courts
have recognized . . . Accordingly, taking into account awards granted by other
courts in this district under similar circumstances, the Court will award $5,000 in
statutory damages, plus an additional $10,000 for the willful nature of defendant's
violation, done for commercial advantage and/or private financial gain.

Id. at 139-40 (emphasis added) (internal citation omitted).

In *Kingvision Pay-Per-View, Ltd. v. Dosani, supra, w*ith respect to enhanced damages

under section 605(e)(3)(C)(ii) (called "punitive damages" by the court) the court noted:

The record shows that defendant showed the Event for the purpose of increasing
the business, customers, and sales revenue. The record does not indicate the
amount of profit, if any, defendant derived from unlawfully broadcasting the
Event. The record does show that the defendant's establishment contained seating
for approximately 200 people, approximately 34 people were present, and each
paid a cover charge of $3.00. Based on the affidavit showing an intentional
violation, this court finds that the record supports a finding of a willful violation
an award of $25,000.00 additional damages beyond the $10,000.00.

*Id.* at *2 (emphasis added).

*Dosani* is also substantially similar to the case herein.  While the Defendant did not

charge a cover, and the establishment in *Dosani* was equivalent, the number of people present

was comparable and it is clear that in both cases the event was shown for the purpose of

increasing business, customers and sales revenue.

Other cases that awarded substantial enhanced damages in a default situation have

included *KingVision Pay-Per-View, Ltd. v. Guerra*, 2007 WL 3001659 (S.D. Tex. 2007)

(awarding statutory damages of $10,000.00 and enhanced damages of $50,000.00)[2]; *Joe Hand*

*Promotions Inc. v. Chapa*, 2009 WL 2215124 (S.D.Tex. 2009) (finding requested damages of

$10,000.00 under section (i)(II) and $50,000.00 under section (ii) to be reasonable)[3]; *Rubio,*

*supra,* (awarding $25,000.00 in enhanced damages under section 605(e)(3)(C)(ii)).

---

[2] The *Guerra* Court did not address the underlying specific facts of the case.

[3] *Chapa* was not a default case.  The defendants originally had Answered and the case was conditionally dismissed
while the parties worked on a settlement.  *Id.* at *1.  When the parties were unable to reach an agreement, Plaintiff
moved to reinstate the case.  *Id.*  The Defendants took no further action and, ultimately, summary judgment was
granted in Plaintiff's favor.  *Id.*

-17-

1    In *Innovative Sports Marketing v. Medeles,* 2008 WL 1758886 (S.D.Tex. 2008), with

2    respect to enhanced damages under section 605(e)(3)(C)(ii) the court noted that, "Because the

3    defendant has not contested the allegations of willfulness, and default judgment has been granted,

4    the court considers the defendant's actions to be willful and for the purpose of commercial

5    advantage." *Id.* at *2.  The court awarded an increase in damages of $50,000.00, "because the

6    defendant is considered to have admitted willfulness, and to deter future violations of § 605(a)."

7    *Id.*; *citing Al-Waha*, 219 F.Supp.2d at 716 for ("The deterrence of future violations ... is one of the

8    objectives of the statute."); *see also Garden City Boxing Club, Inc. v. Batista*, 2007 WL 4276836,

9    *4 (E.D.N.Y. 2007) ("In exercising [its] discretion [to award enhanced damages], courts should

10   be mindful of the difficulty in detecting such violations and the widespread problem of piracy . . .

11   . The court should therefore grant damages in an amount which achieves the deterrent purposes of

12   the statute.").

13   An interesting approach to enhanced damages was used by the Central District of

14   Illinois in *Joe Hand Promotions, Inc. v. Cat's Bar, Inc.,* 2009 WL 700125, *2 (C.D. Ill. 2009).

15   In *Cat's Bar* the Court awarded $10,000.00 in statutory damages and an additional $6,000.00 in

16   enhanced damages because the actions of the defendant were willful.  *Id.*  In the *Cat's Bar* case,

17   there were only 8 people viewing the event and there was no cover charge.  *Id.*  In determining

18   the $6,000.00 enhanced penalty, the Court multiplied the number of patrons by the fee the

19   defendant should have paid for the commercial license.  *Id.*

20   Next, while it may be rare, district courts have awarded the statutory maximums in piracy

21   cases.  For example, in *J & J Sports Productions, Inc. v. Lang*, 2008 WL 2917165, *1

22   (W.D.N.Y.), the court awarded $10,000.00 pursuant to section 605(e)(3)(C)(i)(II) and

23   $100,000.00 pursuant to section 605(e)(3)(C)(ii).  The *Lang* decision did not discuss the specific

24   facts of the case.  *See id.*  In fact, a district court in California also has awarded the "maximum"

25   under section 605.  *See J & J Sports Productions, Inc. v. Ferreyra*, 2008 WL 4104315 (E.D.Cal.

26   2008).[4]  Plaintiff acknowledges that *Ferreyra* involved a repeat offender and that the district

27

28   [4] It appears that the *Ferreyra* Court read Section 605 as permitting a total award of $100,000, not $110,000.  *See id.*
     at *1

1  court took that fact into account in making its award.  *See id.*  In that regard, this case is being

2  presented simply as an example that "maximum" damages awards have occurred.

3          Plaintiff respectfully requests that this Court consider the foregoing cases when

4  determining an appropriate enhanced award to Plaintiff.

5          C.      Nominal Damages Have Proven Insufficient To Combat Piracy.

6          Finally, Plaintiff would like to address those cases that have awarded more nominal

7  damages.  *See e.g. J & J Sports Productions, Inc. v. Medinarios*, 2008 WL 4412240 (N.D.Cal.

8  2008) (Awarding $1,000.00 in statutory damages and $5,000.00 in enhanced statutory damages);

9  *J & J Sports Productions, Inc. v. Manzano*, 2008 WL 4542962 (N.D.Cal. 2008) (Awarding $250

10 in total damages); *J & J Sports Productions, Inc. v. Man Thi Doan*, 2008 WL 4911223 (N.D.Cal.

11 2008) (Awarding $2,500.00 in total damages).  As the Court is aware, and as a simple Lexis or

12 Westlaw search reveals, there are hundreds of these types of cases throughout the nation.

13 Plaintiff respectfully submits that those cases that award nominal damages are a major reason

14 why there have been little to no decrease in piracy.

15         As noted in *J & J Sports Productions, Inc. v. Castrillon*, 2009 WL 1033364, *3

16 (E.D.N.Y. 2009), "Absent substantial financial penalties, the defendant will likely continue to

17 illegally display the plaintiff's programming and other such establishments will follow suit. The

18 plaintiff cannot practicably investigate all these infractions, nor should they be expected to do

19 so." *Id.* (internal citation omitted).   "In order to preserve the plaintiff's livelihood, the

20 Defendant must be held accountable for an amount significant enough to deter such conduct.

21 Absent such a deterrent, the defendant and other potential infringers will be encouraged to

22 violate the law, as infringement would be more cost effective than contracting with the plaintiff."

23 *Id.*

24         As a willful violator of the applicable statutes, the Defendant must be held accountable

25 for a substantial amount above the market value of the sublicense fee to broadcast the *Program*.

26 Otherwise, other commercial establishments "would be encouraged to violate the law knowing

27 the full extent of their liability would not exceed what they would have to pay for a license on

28 the open market." *Fallaci v. New Gazette Literary Corp.*, 568 F.Supp. 1172, 1174 (S.D.N.Y.

1    1983).

2    II.    PLAINTIFF IS ENTITLED TO DAMAGES FOR CONVERSION.

3         Finally, with respect to the conversion claim, damages for conversion are based on the

4    value of the property at the time of the conversion (plus interest).  Cal. Civ. Code § 3336; *see*

5    *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 215, 193 Cal.Rptr. 322.  In addition, the

6    plaintiff in a conversion action is entitled to, "A fair compensation for the time and money

7    properly expended in pursuit of the property."  Cal. Civ. Code § 3336.  In this case, Plaintiff

8    seeks $2,200.00 in conversion damages, the amount Defendant would have been required to pay

9    had he ordered the *Program* from Plaintiff.

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

## **CONCLUSION**

2
      The unauthorized interception, receipt and broadcast of the *Program* and other closed-

3
circuit programming threatens the economic viability of the promotions industry.  There are no

4
countervailing social or policy considerations that justify the unauthorized interception of these

5
broadcasts.  *See ON/TV of Chicago v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985); *Subscription*

6
*Television of Greater Washington v. Kaufman*, 606 F. Supp. 1540, 1544 (D.D.C. 1985).

7
      As a result of theft by the Defendant and others, Plaintiff has lost and will continue to lose

8
legitimate commercial customers that are unwilling and financially unable to compete with

9
unauthorized locations, like Los Manjares Restaurant, that exhibit sports and other closed-circuit

10
programming in an unlicensed manner.  Because these unauthorized commercial establishments

11
offer programming to their patrons for no fee (or for a fee which is less than the authorized

12
establishments charge), the legitimate commercial establishments cannot attract paying customers

13
to offset their sizeable investments in commercial licensing and event promotion, and as a result,

14
incur substantial financial loss.  Ultimately, this eliminates the potential that they will continue to

15
purchase commercial exhibition licenses from the Plaintiff in the future.

16
      Theft of closed-circuit broadcasts, such as the *Program*, by unauthorized commercial

17
establishments adversely impacts both Plaintiff and its lawful customers.  Plaintiff pays

18
substantial fees to promoters to obtain the exhibition rights to sublicense the broadcast of closed-

19
circuit programming to authorized commercial establishments.  Plaintiff's *exclusive* source of

20
revenue is the sublicense fees it charges to authorized commercial establishments for the right to

21
broadcast events like the *Program*.  The corrosive effect of commercial signal theft permanently

22
destroys Plaintiff's lawful customer base.  *See Cox Cable Cleveland Area, Inc. v. King*, 582 F.

23
Supp. 379, 381 (E.D. Ohio 1983).

24
      Further, as a direct and proximate result of piracy, Plaintiff has suffered severe damage to

25
its goodwill and professional reputation, and has invariably lost its right and ability to control

26
and receive fees for transmission of the *Program*.  *See Quincy Cablesystems, Inc. v. Sully's Bar***,**

27
640 F.Supp. 1159, 1161 (D.Ma. 1986).  When negotiating sublicense fees, Plaintiff represents to

28
commercial establishments that it exercises supervision over the commercial distribution of its

-21-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR DEFAULT JUDGMENT BY THE COURT – CASE NO. 1:10-cv-02249-LJO-JLT

programming.  When an unauthorized commercial establishment intercepts, receives, and broadcasts closed-circuit programming, such as the *Program*, Plaintiff's reputation and goodwill suffers irreparable damage with its existing and prospective commercial customers from what appears to be a misrepresentation of such capabilities on its own part.  Ultimately, piracy simply devaluates the product being lawfully developed, marketed, licensed, or sold to the detriment and injury of all.

In light of the foregoing, Plaintiff respectfully requests that this Court use its statutory discretion to award Plaintiff adequate compensation, up to the maximum permissible under statute, from the Defendant for the losses suffered herein.  The sustenance of Plaintiff's small family business concern depends upon the willingness of commercial establishments to pay the Plaintiff sublicense fees for its programming, and the Courts' willingness to deal fairly but firmly with the rising tide of theft of Plaintiff's intellectual property.  Piracy is nothing less than outright theft and a firm judicial hand is required to stop this predatory behavior and compensate the aggrieved accordingly.

Respectfully submitted,

Dated: July 19, 2012

*/s/ Thomas P. Riley*
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
By: Thomas P. Riley
Attorneys for Plaintiff
J & J Sports Productions, Inc.

///

///

///

///

///

///

///

1

## PROOF OF SERVICE (SERVICE BY MAIL)

2

I declare that:

3

I am employed in the County of Los Angeles, California.  I am over the age of eighteen

4

years and not a party to the within cause; my business address is First Library Square, 1114

5

Fremont Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's

6

practice for collection and processing of correspondence/documents for mail in the ordinary course

7

of business.

8

On July 19, 2012, I served:

9

10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

11

12

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage

13

prepaid and following ordinary business practices, said envelope was duly mailed and addressed

14

to:

15

Aurelio Cortes a/k/a Aurelio J. Cortez (Defendant)
3665 East Washington Ave.
Fresno, CA 93702

16

17

Jose Alfredo Gomez (Defendant)
3665 East Washington Ave.
Fresno, CA 93702

18

19

Silvia C. Gomez (Defendant)
3665 East Washington Ave.
Fresno, CA 93702

20

21

22

I declare under the penalty of perjury pursuant to the laws of the United States that the

23

foregoing is true and correct and that this declaration was executed on July 19, 2012, at South

24

Pasadena, California.

25

26

Dated:  July 19, 2012                              */s/ Maria Baird*
                                                          **MARIA BAIRD**

27

///

28

///

-23-