UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JOSE ALFREDO GOMEZ, et al., <br><br> Defendants. | Case No.: 1:10-cv-02249 - LJO - JLT <br><br> FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT <br><br> (Docs. 19, 23) |

J & J Sports Productions, Inc., ("Plaintiff") seeks the entry of default judgment against Aurelio Cortez, individually and doing business as Los Manajares Restaurant ("Defendant"). (Doc. 19). The motion is unopposed. For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED**.

**I.      Procedural History**

On December 3, 2010, Plaintiff filed its complaint against Jose Alfredo Gomez and Silvia C. Gomez, individually and doing business as Los Manjares Restaurant. (Doc. 1). Upon application of Plaintiff, default was entered against these defendants pursuant to Fed. R. Civ. P. 55(a) for their failure to answer. (Docs. 9-10). However, Jose Gomez and Silvia Gomez filed a "Notice of Filing Bankruptcy" on April 20, 2011. (Doc. 13).

Plaintiff filed its First Amended Complaint against Jose Gomez, Silvia Gomez, and Aurelio Cortes, individually and doing business as Los Manjares Restaurant on May 17, 2011. (Doc. 14).

1

According to Plaintiff, the company secured nationwide commercial exhibition rights to broadcast "Oscar De La Hoya v. Manny Pacquiao Welterweight Championship Fight Program" (the "Program"). (Doc. 14 at 4). However, Plaintiff contends the Program was broadcast in Los Manjares Restaurant without the purchase of a proper sublicense. *Id.* at 5.

Defendant Aurelio Cortes was properly served with the First Amended Complaint, but failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Upon application of Plaintiff, default was entered against Defendant pursuant to Fed. R. Civ. P. 55(a) for his failure to answer on April 16, 2012. (Doc. 18). On July 19, 2012, Plaintiff filed the motion now pending before the Court seeking default judgment against Defendant. (Doc. 19).

The Court reviewed the motion on August 21, 2012, and observed Plaintiff sought default judgment on a claim arising under the Federal Communications Act of 1934, arising under 47 U.S.C. § 605. (Doc. 22). Noting this claim is not present in Plaintiff's First Amended Complaint, which alleges violations of the Copyright Act, the Court directed Plaintiff to file supplemental briefing is required on the alleged violations of the Copyright Act and the award amount requested by Plaintiff. *Id.* at 2-3. Accordingly, Plaintiff filed a brief on September 4, 2012, and addressed the Copyright Act and conversion claims. (Doc. 23).

**II.     Legal Standards for Default Judgment**

The Federal Rules of Civil Procedure govern the entry of default judgment. When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically

entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit opined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III.   Plaintiff's Factual Allegations

The factual assertions of Plaintiff are taken as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program. (Doc. 14 at 4). Pursuant to that contract, Plaintiff reports the company entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. *Id.*

According to Plaintiff, each defendant "is an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Los Manjares Restaurant..." (Doc. 14 at 3). Plaintiff alleges Defendant broadcast the Program in the establishment without purchasing a proper sublicense. *Id.* at 4-5. For this act, Plaintiff alleged violations of the Copyright Act and conversion. *Id.* at 3-7.

### IV.   Application of *Eitel* Factors

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in favor of granting Plaintiff's motion for default judgment.

A.   Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to a plaintiff militates in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. In general, where default has been entered against a defendant,

a plaintiff has no other means by which to recover damages. *Id.*; *J & J Sports Prods. v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

B.   Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See J & J Sports Productions v. Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing *Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

*1.   Copyright Act Violation*

"Under copyright law, only copyright owners and exclusive licensees of copyright may enforce a copyright or a license." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (citing 17 U.S.C. § 501(b)) (conferring standing only to the "legal or beneficial owner of an exclusive right who is entitled . . . to institute an action for any infringement . . . while he or she is the owner of it" (internal quotation marks omitted)). An owner of a copyright has the exclusive rights to authorize reproductions of the copyrighted work, prepare derivative works, display the copyrighted work publicly, and distribute copies "by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106. To establish a claim for copyright infringement, a plaintiff: (1) "must show ownership of the allegedly infringed material" and (2) "demonstrate that the alleged infringer[] violate[d] at least one exclusive right granted to copyright holders." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

Here, Plaintiff alleges the company held "the exclusive nationwide commercial distribution (closed-circuit) rights" for the Program broadcast on December 6, 2008. (Doc. 14 at 4). In addition, Plaintiff asserts that it was "the assignee of the copyright to the Program for enforcement purposes." *Id.* Thus, Plaintiff contends the company is "the party with lawful standing to prosecute claims of piracy and infringement against the legal operators of commercial investments who are identified exhibiting the Program without the requisite closed-circuit (commercial) license." *Id.* Because

Plaintiff alleges it held the exclusive rights to the national broadcast, the company may enforce an alleged copyright violation. *See Sybersound Records*, 517 F.3d at 1144.

Plaintiff alleges Defendant infringed upon the company's exclusive rights by intercepting the Program transmission and publicly exhibiting the Program without authorization from Plaintiff. (Doc. 15 at 5). In addition, Plaintiff contends Defendant made a secondary transmission of the Program, which infringed upon Plaintiff's rights pursuant to 17 U.S.C. § 111(b). *Id.* Thus, Plaintiff alleges Defendant violated its exclusive right publicly broadcast, or distribute, the Program. Consequently, Plaintiff has alleged facts supporting the claim of a violation of the Copyright Act.

### 2. *Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages"). Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion." *G & G Closed Circuit Events, LLC v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10 (E.D. Cal. Aug. 2, 2010) (citing *Don King Prods./Kingsvision v. Lovato*, 911 F. Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the exclusive distribution right, Plaintiff held a "right to possession of property." In addition, Plaintiff has alleged Defendant engaged in signal piracy by broadcasting the program without purchasing a sublicense from Plaintiff. The rate sheet attached to the affidavit of Joseph Gagliardi, President of J & J Sports Productions, indicates a sublicense would have cost $2,200 for an establishment with the capacity of Los Manjares Restaurant. (Doc. 20, Exh. 1). Consequently, Plaintiff has established monetary damages and stated a claim for conversion against Defendant.

C.   Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176. Here, Plaintiff prays for statutory damages of $150,000 for the violation of the Copyright Act. (Doc. 23 at 9). This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages. *Id.* In addition, Plaintiff seeks compensatory damages in the amount of $2,200 for Defendant's tortuous conversion of Plaintiff's property. *Id.* at 14.

Given the substantial amount of money at stake, this factor weighs against the entry of default judgment. *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); *but see Hernandez*, 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment).

D.   Possibility of dispute concerning material facts

Generally, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendants have failed to defend their case. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. Therefore, this factor does not weigh against entry of default judgment.

E.   Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendant was served with the Summons and Complaint, as well as the motion for default judgment and the supplemental brief. (*See* Doc. 19-1 at 23, Doc. 23 at 15). Given these circumstances, it is unlikely that Defendant's inaction was the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint,

the notice of entry of default, as well as the papers in support of the instant motion"). As a result, this factor does not weigh against default judgment.

### F. Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendant's failure to answer the Complaint makes a decision on the merits impractical. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against Plaintiff.

## V. Default Judgment against a Single Defendant

Plaintiff seeks judgment against Aurelio Cortez, although other defendants remain[1] in the action. Thus, the question arises as to whether the Court should enter default judgment against less than all of the defendants. Under the Federal Rules of Civil Procedure, "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Therefore, the Court has discretion to deny entry of default judgment where a just reason exists to delay entry of a final judgment as to defendant Aurelio Cortez. *Id.*; *see also Shanghai*, 194 F.Supp.2d at 1005.

The Supreme Court warned that "absurdity might follow" in instances where a court "can lawfully make a final decree against one defendant . . . while the cause was proceeding undetermined against the others." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872). The Ninth Circuit has summarized the *Frow* standard as follows: "[W]here a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Investment*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow*, 82 U.S. at 554). The rule is designed to avoid inconsistent judgments against defaulting defendants and the remaining defendants. *Shanghai Automation Instrument Co., Ltd., v. Kuei*, 194 F.Supp.2d 995 (N.D.Cal.2001) citing *Frow*, 82 U.S. at 554–55. Here, however, all

---

[1] These Defendants filed a "Notice of Filing Bankruptcy" on May 17, 2011. (Doc. 14) Given this, the Court sought additional clarification from Plaintiff whether it still intended to pursue its claims against these defendants. (Doc. 22) In doing so, the Court advised Plaintiff that, generally, entry of default judgment against fewer than all defendants is to be avoided. Id. at 3.

7

defendants have already had default entered.  Thus, the policy considerations of Rule 54(b) do not apply. Therefore, there is no risk of inconsistent results among the Defendants and the Court sees no just reason to delay these proceedings.

**VI.     Damages**

The Copyright Act, pursuant to 17 U.S.C. §§ 504 (a) and (c), permits a copyright owner to recover: (1) actual damages and any additional profits of the infringer, or (2) statutory damages amounting to a minimum of $750 and maximum of $30,000 per copyright infringement, as the Court considers just.  17 U.S.C. §§ 504(a), (c).  "[W]here a copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).  Here, Plaintiff seeks an award of statutory damages, arguing that "it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions."  (Doc. 23 at 8).

The Court has "wide discretion" in its award of statutory damages for a violation of the Copyright Act.  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  The Supreme Court explained factors include: "the nature of the copyright [and] the circumstances of the infringement."  *F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952) (citation omitted).  In addition, the Court may consider factors such as the seating capacity of the establishment, the number of patrons present at the time of the broadcast, whether there was a cover charge, whether the Defendant advertised the broadcast, the number and size of televisions used for the broadcast, and whether a premium was charged on food or drink.  *See J & J Sports Prods. v. Brown*, 2011 U.S. Dist. LEXIS 142711, at *11-12 (E.D. Cal. Dec. 11, 2011) (observing the structures of the Copyright Act and the Communications Act "are closely parallel," and using the above factors to determine an appropriate award); *see also Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 963 (N.D. Ill. 2000) (recognizing that the same conduct can violate both the Copyright Act the Communications Act, and that the remedial structures of the two statutes are analogous).

Ramon Simon, Plaintiff's investigator, noted Los Manajares advertised the fight with a four-foot banner on the walkway, with pictures of Oscar de Hoya and Panny Pacquiao, as well as a poster

8

on the doors of the restaurant. (Doc. 19-3 at 3). Mr. Ramon reported there was not a cover charge, but did not note whether a premium was charged for food or drink. *Id.* at 3. The Program was displayed on two television sets, one of which Mr. Ramon described as "a big screen." *Id.* Although he did not state the capacity of the establishment, Mr. Ramon estimated there were "approximately 40 persons inside." *Id.* at 2. Finally, Plaintiff has not presented evidence that Defendant is a repeat offender. Given these factors, most notably, advertising the event, the Court finds an award of $12,000 is appropriate.[2]

Although Plaintiff seeks separate compensation for the tort of conversion, because Plaintiff chose to receive statutory damages rather than actual damages under the Copyright Act, damages for conversion are subsumed into the total of $12,000. *See J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (E.D. Cal. May 7, 2010) (declining conversion damages statutory damages "sufficiently compensate[d]" the plaintiff).

## VII.    Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. However, the damages requested are disproportionate to Defendants' actions. The Supreme Court explained that under the Copyright Act, an award of statutory damages should "not merely compel[] restitution of profit and reparation for injury but also . . . discourage wrongful conduct." *F. W. Woolworth Co.*, 344 U.S. at 233. The award of $12,000, which is more than five times the cost of a proper sublicense for the

---

[2] With the Communications Act, Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors. *See, e.g., J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 in statutory damages, an amount two times the cost of a sublicense).

Program, both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of copyright violation.

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**: that Plaintiff's application for default judgment (Doc. 19) be **GRANTED AS FOLLOWS**:

1. Plaintiff's request for damages for the violation of the Copyright Act and conversion be **GRANTED** in the amount of $12,000; and

2. Plaintiff be directed to file its application for attorney's fees pursuant to 17 U.S.C. § 505 no later than fourteen days from the entry of judgment.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 15, 2012**                              **/s/ Jennifer L. Thurston**
                                                                                 UNITED STATES MAGISTRATE JUDGE